

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT NORTH CAROLINA

UNITED STATES OF AMERICA,

V.                                 Docket No.5:15-CR-124

ELLIETT CORNAL SHARPE,

Defendant.

**PRO-SE SUPPLEMENTAL MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) FOR IMMEDIATE RELEASE, AND EMERGENCY MOTION***

Elliett Cornal Sharpe

Reg. No. 59245-056

FMC Devens, P.O. Box 879

Ayer, MA. 01432

---

*Defendant Sharpe has already file Administrative Remedies under 18 U.S.C. 3582, but not under COVID-19. (See Subsection "B").

## I. INTRODUCTION

NOW COMES, defendant Elliett Cornal Sharpe (hereinafter, the "Defendant" or Sharpe"), proceeding pro-se, who respectfully moves this Honorable Court pursuant to the newly amended 18 U.S.C. § 3582(c)(A)(i) for an order reducing his sentence to time served based on his terminal diagnosis, and COVID-19; to prevent a manifest injustice.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The defendant has written this request for parties, who are familiar with the facts, procedural history, and the scope of the instant petition for Commutation of Sentence. Thus, she will recount only those statements and facts necessary for this request and the pending petition. In support thereof, the following is stated:

## III. EMERGENCY MOTION

Defendant respectfully requests this Honorable Court accelerate and expedite these proceedings. The normal schedule for resolution of the matter before this Court will result in an untimely resolution of the matter and cause irreparable harm to the Defendant in this case as it appears that the Defendant is entitled to immediate release.

## IV. MOTION PAPERS

This Motion is based on facts and authority within this document, on the supporting Motion to expedite proceedings referred to below, all of the pleadings and papers on file in this action, and whatever evidence may be provided at an evidentiary hearing before the Court on this Motion.

## V. SUMMARY ARGUMENT

In appropriate cases, such as when there is an urgent need to resolve the appeal quickly to prevent harm, a party may file a motion to expedite the appeal as an emergency motion. Expedited delivery of an opinion in this matter would be in the interest of justice. Because the facts in this case are undisputed, and there is no need for any finding of facts, urgent resolution of this matter is required if the relief sought in this action is to have meaning. Under the facts of this case, the Defendant is eligible for a sentence of time served

An updated list of cases where judges have released individuals from custody because of the COVID-19 crisis:

- United States v. Selna, 8:16-cr-76-JVS (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i).)

- United States v. Jaffee, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun & drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement")

- United States v. Harris, No. 19-cr-356 (D.D.C. Mar. 26, 2020) ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions.")

- United States v Garlock, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in sua sponte extending time to self-surrender: "[b]y now it almost goes without saying that we should not be adding to the prison population during the COVID-19 pandemic if it can be avoided")

- United States v. Perez, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19")

- In re Manrigue, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail.")

- In re Request to Commute or Suspend County Jail Sentences, Docket No. 084230 (N.J. Mar. 22, 2020) (releasing large class of defendants serving time in county jail "in light of the Public Health Emergency" caused by COVID-19)

- United States v. Avenatti, No. 8:19-cr-61 (C.D. Cal. Mar. 25, 2020) (sua sponte inviting defendant to move for reconsideration of a just-denied motion for release "[i]n light of the evolving nature of the Covid-19 pandemic")

3

- United States v. Barkman, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (suspending intermittent confinement because "[t]here is a pandemic that poses a direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe County Detention Facility")

- United States v. Copeland, No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting compassionate release to defendant in part due to "Congress's desire for courts to release individuals the age defendant is, with the ailments that defendant has during this current pandemic").

- United States v. Stephens, 2020 WL 1295155, F. Supp. 3d (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic")

- United States v. Matthaei, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-19)

- Xochihua-James v. Barr, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (sua sponte releasing detainee from immigration detention "[I]n light of the rapidly escalating public health crisis")

# DISCUSSION

## A. THIS COURT HAS AUTHORITY TO RESENTENCE THE DEFENDANT UNDER 18 U.S.C. § 3582(c)(1)(A)(i) FOR THE "EXTRAORDINARY AND COMPELLING REASONS" CREATED BY THE COVID-19 PANDEMIC AND THE PRISON CONDITIONS WHICH PREVENT SELF-CARE FOR A HIGH- RISK PATIENT

With the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons." Importantly, the reasons that can justify resentencing need not involve only terminal illness or urgent dependent care for minor children.

Congress first enacted the modern form of the compassionate release statute, codified at 18 U.S.C. § 3582, as part of the Comprehensive Crime Control Act of

4

1984. Section 3582(c) states that a sentencing court can reduce a sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). In 1984, Congress conditioned the reduction of sentences on the BOP Director's filing of an initial motion to the sentencing court. Absent such a motion, sentencing courts had no authority to modify a prisoner's sentence for compassionate release. Id.

Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under Section 3582(c). But the legislative history to the statute gives an indication of how Congress thought the statute should be employed by the federal courts. The Senate Committee stressed how some individual cases, even after the abolishment of federal parole, still may warrant a second look at resentencing:

The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment.

S. Rep. No. 98-225, at 55-56 (1983) (emphasis added). Congress intended that the circumstances listed in § 3582(c) would act as "safety valves for modification of sentences," id. at 121, enabling judges to provide second looks for possible sentence reductions when justified by various factors that previously could have been addressed through the abolished parole system. This safety valve statute would "assure the availability of specific review and reduction of a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to changes in the guidelines." Id. Noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, the statute permitted "later review of sentences in particularly compelling situations." Id. (emphasis added).

Congress initially delegated the responsibility for outlining what could qualify as "extraordinary and compelling reasons" to the U.S. Sentencing Commission ("Commission"). See 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.").

5

The Commission took considerable time to promulgate its policy in response to Congress's directive. It finally acted in 2007, almost a generation later, with the very general guidance that "extraordinary and compelling reasons" may include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A). However, this guidance did little to spur the BOP to file on behalf of prisoners who might have met these general standards. After a negative Department of Justice Inspector General report found that the BOP rarely invoked its authority under the statute to move for reduced sentences, the Commission felt compelled to act again. See U.S. Dep't of Justice, Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program, I-2023-006 (Apr. 2013). The Commission amended its policy statement on "compassionate release" in November 2016. See U.S.S.G. § 1B1.13 Amend. (11/1/2016). In addition to broadening the eligibility guidelines for sentencing courts, the new policy statement admonished the BOP for its past failures to file motions on behalf of inmates who had met the general criteria identified in U.S.S.G. § 1B1.13. See U.S.S.G. § 1B1.13, n.4; see also United States v. Dimasi, 220 F. Supp. 3d 173, 175 (D. Mass. 2016) (discussing the history of the BOP, DOJ and Commission's interplay in developing guidance for "compassionate release" motions). Notably, the Commission concluded that reasons beyond medical illness, age, and family circumstances could qualify as "extraordinary and compelling reasons" for resentencing. Id., n.1(A) (including a category for "Other Reasons," when there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."). But see United States v. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) (holding that, given the changes to the compassionate release statute by the First Step Act, U.S.S.G. § 1B1.13, application note 1(D) "no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582."); United States v. Fox, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); United States v. Cantu-Rivera, No. CR H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019) ("Because the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect."); United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (holding that application note 1(D) is "inconsistent with the First Step Act, which was enacted to further increase the use of

6

compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate," and courts thus may "consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement"); but see United States v. Lynn, No. CR 89-0072- WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019) (holding that application note 1(D) governs compassionate release reductions of sentence and federal judges have no authority to create their own criteria for what constitutes an "extraordinary and compelling" reason for resentencing).

The Commission's actions, however, did little to change the dearth of filings by the BOP on behalf of inmates who satisfied the Commission's general guidance. During the more than three decades during which the BOP was the exclusive gatekeeper for "compassionate release" motions, very little effort was made to implement Congress's intention to provide a safety valve to correct injustices or allow relief under extraordinary and compelling circumstances.

Finally, this changed with the passage of the First Step Act in 2018. See P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Section 603 of the First Step Act changed the process by which § 3582(c)(1)(A) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and move for release, a court can now resentence "upon motion of the defendant," after the inmate exhausted administrative remedies with the BOP, or after 30 days from the receipt of the inmate's request for compassionate release with the warden of the defendant's facility, whichever comes earlier. 18 U.S.C. § 3582(c)(1)(A). Thus, under the First Step Act, a court may now consider the defendant's own motion to be resentenced, without waiting for it to be made by the BOP.

Courts are now authorized to consider a defendant's motion, even one which the BOP opposes, and order resentencing if a resentencing court finds that "extraordinary and compelling reasons" warrant a reduction and such a reduction is consistent with the Section 3553(a) factors. Id. Resentencing courts are also advised that any decision to reduce a previously ordered sentence be "consistent with applicable policy statements issued by the Sentencing Commission." Id.

Here, while the 30-day period since the warden's receipt of Sharpe's request for compassionate release due to the threat of coronavirus infection has not yet passed,

this Court can construe the exhaustion requirement as futile given the urgency of this national emergency and rapid spread of the pandemic.

## B. THE COURT CAN WAIVE THE 30-DAY REQUIREMENT FOR EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER 18 U.S.C. § 3582(c)(1)(A) BECAUSE OF THE URGENT RISK OF FATAL INFECTION

Sharpe would ordinarily be required to either wait 30 days following the warden's receipt of his compassionate release request, or exhaust all administrative remedies prior to approaching the Court, whichever happens earlier. See 18 U.S.C. § 3582(c)(1)(A). However, the Court may waive these administrative exhaustion requirements, and should do so here. (See United States v. Perez, ___F. Supp. 3d ___S.D.N.Y. 2020) ("the high risk of contracting COVID-19…justifies waiver of the exhaustion requirement.").

Under First Step Act, although a prisoner seeking to alter his/her conditions of imprisonment generally must exhaust administrative remedies before resorting to judicial intervention, the Court may waive that prerequisite. See, e.g., Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (under Prison Litigation Reform Act, where the prisoner "did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements," permitting the court to waive the failure to exhaust (quotation marks and citations omitted)). Accord Vogelfang v. Riverhead Cnty. Jail Officers, No. 07-1268-CV, 2009 WL 230132, at *2 (2d Cir. Feb. 2, 2009) (reviewing dismissal of under Prison Litigation Reform Act action for failure to exhaust finding "[i]t was error for the district court not to consider Vogelfang's arguments . . . that her failures to exhaust should be excused."); Carmona v. U.S. Bur. of Prisons, 243 F.3d 629, 634 (2d Cir. 2001) (while prior to filing a habeas corpus petition under § 2241 "federal prisoners must exhaust their administrative remedies . . . [w]hen, however, legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the standard we adopt excuses this failure to exhaust"). Thus, courts in the Second Circuit have "excuse[d] exhaustion if it appears that an administrative appeal would be futile, or because the appeals process is shown to be inadequate to prevent irreparable harm to the defendant."

United States v. Basciano, 369 F. Supp. 2d 344, 348 (E.D.N.Y. 2005) (addressing § 2241 habeas claim regarding circumstances of confinement despite defendant's failure to exhaust administrative remedies); accord United States v. Khan, 540 F. Supp. 2d 344, 350 (E.D.N.Y. 2007) (under PLRA, "[a] court may, however, excuse the exhaustion requirement if a petitioner demonstrates that pursuing appeals through the administrative process would be futile or that the appeals process is inadequate to prevent irreparable harm to the petitioner"). Accord Charboneau v. Menifee, No. 05 CIV. 1900 (MBM), 2005 WL 2385862, at *2 n.3 (S.D.N.Y. Sept. 28, 2005) (in addressing petition for determining eligibility for placement in a halfway house, the court excused the defendant's failure to exhaust administrative remedies "on the grounds of futility, and the likelihood of irreparable injury before further appeals could be exhausted"); Drew v. Menifee, No. 04 CIV. 9944HBP, 2005 WL 525449, at *3 n.1 (S.D.N.Y. Mar. 4, 2005] (granting, in part, motion "to release petitioner to community confinement in a halfway house when petitioner has six months remaining on his sentence after deduction of good time credits," explaining that any failure to exhaust administrative remedies "should be excused on the ground of futility."); Terry v. Menifee, No. 04 CIV. 4505 (MBM), 2004 WL 2434978, at *2 (S.D.N.Y. Nov. 1, 2004) (excusing failure to exhaust administrative remedies "on the grounds of futility and irreparable injury" in 2241 habeas corpus petition requesting determination of eligibility for transfer to a halfway house).

The First Step Act did not alter this longstanding precedent—both the administrative exhaustion procedure and the circumstances meriting its waiver remain unchanged. See, e.g., United States v. Bolino, No. 06-CR-0806 (BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) (under the First Step Act, "the same exhaustion procedure for routine administrative grievances . . . applies to requests for compassionate release."). Indeed, courts throughout the country have continued to waive the administrative exhaustion requirements under the First Step Act, where circumstances warrant. See Washington v. Bur. of Prisons, No. 1:19-CV-01066, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019) (in addressing motion for recalculation of good time credit under the First Step Act, the court explained that "[t]he failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile."); United States v. Walker, No. 3:10-cr-00298-RRB-1, [Dkt. 110] (D. Or. Feb. 7, 2019) (finding that, although the defendant failed to exhaust administrative remedies, the Court had jurisdiction to order recalculation of defendant's good time credit under the First Step Act and to order defendant's release if his term of imprisonment had expired); see also Gurzi

v. Marques, No. 18-CV-3104- NEB-KMM, 2019 WL 6481212, at *2 (D. Minn. Oct. 10, 2019) (despite prisoner's failure to exhaust administrative remedies, addressing the merits of prisoner's objections to his designation, in part under the First Step Act, as "the Court observes that it has the authority to proceed to the merits of the case rather than rely on a failure to exhaust when appropriate."). Nor is there a colorable argument that the exhaustion requirement under the First Step Act is jurisdictional. Like the administrative exhaustion requirements applicable to § 2241 petitions, and under the PLRA, § 3582(c)(1)(A) "lacks the sweeping and direct language that would indicate a jurisdictional bar rather than a mere codification of administrative exhaustion requirements." Richardson v. Goord, 347 F.3d 431, 434 (2d Cir. 2003) (quotation marks and citations omitted); see also Atkinson v. Linaweaver, No. 13 CIV. 2790 JMF, 2013 WL 5477576, at *1 (S.D.N.Y. Oct. 2, 2013) ("In a case brought pursuant to Section 2241, exhaustion . . . does not go to the Court's jurisdiction to adjudicate the dispute").

The futility and potentially irreparable harm of requiring Sharpe to wait a minimum of 30 days to exhaust his administrative remedies are manifest. Sharpe seeks this emergency relief to avoid contracting COVID-19 at FMC Devens where he has a high risk of infection: "social distancing" is impossible in the crowded facility, and soap, hand sanitizer and disinfectant products are scarce. Waiting for Sharpe to exhaust his administrative remedies would only compound his risk of exposure to COVID-19. Should he contract the virus while waiting for an administrative response any remedy will come too late— Sharpe will be in mortal danger, causing his potentially irreparable physical harm, and rendering this compassionate release request utterly moot. See, e.g., Sorbello v. Laird, No. 06 CV 948 (JG), 2007 WL 675798, at *3 n.8 (E.D.N.Y. Feb. 28, 2007) (refusing to dismiss petition requesting designation to halfway house "for failure to exhaust administrative remedies" where delay in processing administrative remedies would "result in the irreparable harm of late designation to community confinement"); Pimentel v. Gonzales, 367 F. Supp. 2d 365, 371 (E.D.N.Y. 2005) (addressing merits of request for designation to halfway house, where "not only would an administrative appeal be futile, but without immediate relief by this court, Pimentel could suffer irreparable harm," as "[w]ere Pimentel required to pursue administrative remedies prior to bringing this action, he would likely be done serving much, if not all of his entire sentence such that his request would become moot."). The factual questions at issue—the rapid spread of COVID-19, the serious danger to certain high- risk individuals, and Sharpe's health conditions placing him

squarely in the highest fatal risk group—are well-developed in the record before this Court, thus rendering administrative exhaustion all but pointless. See Gurzi, No. 18-CV-3104-NEB-KMM, 2019 WL 6481212, at *2 ("given the clear circumstances here, a principal purpose of administrative exhaustion, the development and crystallization of the factual record, is not implicated in this case." (quotation marks and citations omitted)).

The Bureau of Prisons has known for months of the impending COVID-19 crisis, creating a further reason to excuse Sharpe's failure to exhaust all administrative remedies. The BOP has had ample opportunity to adequately prepare FMC Devens for this emerging health crisis, which would have obviated the need for Sharpe's emergency compassionate release petition. Because the BOP was on notice of the potential dangers to inmates like him, Sharpe should not be required to wait while the BOP takes additional time addressing his administrative request. See Basciano, 369 F. Supp. 2d at 349 (despite failure to exhaust administrative remedies, because "the BOP ha[d] not addressed [his] request for relief in a timely fashion," despite "ample opportunity" to do so, the court found that "[t]he administrative appeals process would thus, in the circumstances of this case, be an empty formality that would risk exposing Basciano to irreparable harm"). Sharpe should not be forced to bear the brunt of the facility's failure to adequately prepare for COVID-19. In these extraordinary circumstances, the Court should waive the administrative exhaustion requirement in § 3582.

## C. THE COVID-19 OUTBREAK PRESENTS A COMPELLING AND EXTRAORDINARY CIRCUMSTANCE THAT WARRANTS COMPASSIONATE RELEASE FOR SHARPE, WHO IS A HIGH-RISK FATALITY PATIENT

On March 11, 2020, the World Health Organization ("WHO") officially classified the new strain of coronavirus, COVID-19, as a pandemic. We have watched the inexorable progression of COVID-19 around the globe, helpless to stop its incursion across our borders. As a result, we now live in a world largely unrecognizable from that which we occupied a mere few weeks ago. Our everyday lives have, quite literally, ground to a halt. Indeed, the World Health Organization ("WHO") has classified COVID-19 as a global pandemic that has, as of the date of

Sharpe's motion, infected 932,166 people worldwide and killed more than 46,764. We watch these bleak numbers exponentially increase every day.

These numbers almost certainly underrepresent the true scope of the crisis; test kits in the United States have been inadequate to meet demand.

On March 13, 2020, the White House declared a national emergency, under Section 319 of the Public Health Service Act, 42 U.S.C. § 247(d)). On March 16, 2020, the White House issued guidance recommending that, for the next eight weeks, gatherings of ten persons or more be canceled or postponed. On March 20, 2020, Governor Andrew Cuomo ordered 100 percent of all non-essential workers to remain home, effectively shuttering New York state's entire economy. These drastic measures followed the issuance of a report by British epidemiologists, concluding from emerging data that 2.2 million Americans could die without drastic intervention to slow the global spread of the deadly disease.

The Centers for Disease Control and Prevention ("CDC") have also issued guidance related to the deadly effects of COVID-19 on certain high-risk patients of the population. The CDC identified the population most at risk of death from the disease to include adults over 50 years old with chronic medical conditions, such as lung disease, heart disease, chronic kidney disease, hypertension and diabetes. For these individuals, the CDC warned to take immediate preventative actions, including avoiding crowded areas and staying at home as much as possible. Id.

## D. THE CONDITIONS OF BOP INCARCERATION FOSTER THE SPREAD OF COVID-19, AND SHARPE'S AGE AND PREEXISTING MEDICAL CONDITIONS RENDER HIM PARTICULARLY SUSCEPTIBLE TO AN UNREASONABLE RISK OF DEATH AND AN INABILITY TO TAKE PREVENTATIVE MEASURES OR SELF-CARE RECOMMENDED BY THE CDC

With the COVID-19 pandemic, it is only a matter of time before COVID-19 finds its way into FMC Devens, where Sharpe is housed. Conditions of confinement at FMC Devens create an optimal environment for the transmission of contagious

12

disease. People who work in the facility leave and return daily; people deliver supplies to the facility daily; inmates were having social, legal and medical visits regularly after the initial spread of the virus prior to the BOP's decision to stop visits for 30 days on March 13, 2020. Public health experts are unanimous in their opinion that incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," and "infection control is challenging in these settings." "Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States" (March 2, 2020), at htttps://bit.ly/2W9V6oS.

Sharpe is powerless to take the preventative self-care measures directed by the CDC for his high-risk group to remain safe from COVID-19 infection. He cannot self-quarantine or partake in "social distancing" in his prison facility. There are also community spaces where inmates and prison staff gather, including a common room, laundry facilities, barber shop, medical areas, dining hall, small library and gym. These high-density areas are precisely the kind of spaces that have caused the alarmingly high-spread rates of COVID-19 in prison. Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content. Correctional health experts worry that no matter what precautions are taken by crowded prisons, these facilities may become incubators for the COVID-19 disease.

During the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases because they could not maintain the level of separation and sanitation necessary to prevent widespread infection. "Prisons and Jails are Vulnerable to COVID-19 Outbreaks," The Verge (Mar. 7, 2020), available at htttps://bit.ly/2TNcNZY.

The Prison Policy Initiative has called on American jails and prisons to release medically fragile and older adults, noting that these persons are at high risk for serious complications and even death from COVID-19. Similarly, members of Congress have written to the BOP to urge that efforts be made to allow immediate release of non-violent, elderly inmates. Letter of Representatives Jerrold Nadler and Karen Bass (March 19, 2020) ("DOJ and BOP must also do all they can to release as many people as possible who are currently behind bars and at risk of getting sick. Pursuant to 18 U.S.C. 3582(c)(1)(A), the Director of the Bureau of

Prisons may move the court to reduce an inmate's term of imprisonment for "extraordinary and compelling reasons.").

Given that Sharpe is 41 years old, and he suffers from significant underlying health issues that make him exceptionally vulnerable to COVID-19, compelling and extraordinary circumstances exist to support compassionate release at this unique time in our country's history. There is an urgent need to act now, before the virus spreads within the prison and Sharpe becomes infected. In sum, the risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected.

In summary, the COVID-19 virus is highly transmissible, extraordinarily dangerous, and poses a severe threat of death to the high-risk medical profile of Sharpe. The conditions at FMC Devens do not allow Sharpe to take the self-care measures required by the CDC to protect him safety.

Accordingly, this Court should find that, in light of the heightened medical risk presented to Sharpe by the COVID-19 pandemic, there are extraordinary and compelling reasons to reduce Sharpe's sentence in the manner requested—to wit, releasing him from custody and requiring him to serve his sentence release on home confinement, on specified conditions.

This conclusion is supported by the application of the § 3553(a) factors. Sharpe has served a substantial majority of his prison sentence.

Section 3553(a) requires a sentencing court consider the "history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). Viewed now in the light of a raging and virulent pandemic that has entered federal prisons and that poses a special risk to Sharpe's health, these factors, together, now counsel allowing him to be released and serve her remaining time in home confinement. For reasons including those set out at length at Sharpe's no longer will present a meaningful danger to the community if at liberty. And the conditions of his forthcoming home confinement will meaningfully restrict his freedom of movement during the remainer of the sentence.

# CONCLUISON

Accordingly, this Court should find that extraordinary and compelling reasons warranting a reduction of Sharpe's sentence, that he does not pose a danger to the community, that the § 3553(a) factors now support a reduction of sentence, and that the reduction sought is consistent with the Sentencing Commission's policy statement.

Respectfully Submitted,

_____

Elliett Cornal Sharpe, pro-se

Dated: 4/6/20

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on 4/6, 2020 the foregoing PRO-SE SUPPLEMENTAL MOTION IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO THE FIRST STEP ACT OF 2018 was served upon the U.S. Attorney for the Eastern District Northern Carolina via U.S. mail and pre-paid mail.

_____

Elliett Cornal Sharpe, pro-se